UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA          :

      - v. -          :

NICHOLAS JOSEPH GENOVESE,          :

                  :

      Defendant.

                  :

- - - - - - - - - - - - - - - X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAR 0 1 2018

INDICTMENT

18 CRIM 183

Judge Pauley

## COUNT ONE
### (Securities Fraud)

The Grand Jury charges:

### Relevant Individuals and Entities

1. At all times relevant to this Indictment, NICHOLAS JOSEPH GENOVESE, the defendant, was the founder and portfolio manager of a purported hedge fund called Willow Creek Investments LP (the "Willow Creek Hedge Fund"). GENOVESE also operated several related entities, including: Willow Creek GP LLC (the "General Partner"), which purported to be the general partner of the Willow Creek Hedge Fund, and Willow Creek Advisors LLC ("Willow Creek Advisors"), which purported to manage the Willow Creek Hedge Fund's capital (these entities collectively, the "Willow Creek Entities").

2. At all times relevant to this Indictment, the Willow Creek Hedge Fund, the General Partner, and Willow Creek Advisors all reportedly had their principal places of business in New York,

New York.

3. At all times relevant to this Indictment, Investor A was a businessman who resided in Michigan.

4. At all times relevant to this Indictment, Investor B was a businessman who resided in Michigan.

5. At all times relevant to this Indictment, Investor C was a medical doctor who resided in New York.

## The Scheme to Defraud

6. From at least in or about January 2015 through at least on or about February 2, 2018, NICHOLAS JOSEPH GENOVESE, the defendant, engaged in a scheme to defraud investors in the Willow Creek Hedge Fund, including Investor A, Investor B, and Investor C (collectively, the "Investors"). As part of this scheme, GENOVESE solicited millions of dollars in investments in the Willow Creek Hedge Fund from the Investors based on material misrepresentations and omissions concerning, among other things, GENOVESE's background, his educational and professional experience, and his credentials and qualifications for managing a hedge fund. For example, as set forth below, in soliciting such investments from the Investors, GENOVESE made the following false representations, among others:

a. GENOVESE claimed to the Investors that he was part of the Genovese family that had owned the Genovese Drug Store chain in the New York area and that he was an heir to this family's

2

fortune resulting from the sale of Genovese Drug Store chain for hundreds of millions of dollars in the late 1990s. In fact, GENOVESE was not a member of this family and not an heir to its fortune.

b. GENOVESE claimed to the Investors that he had earned a bachelor's degree in finance from the University of Kentucky. In fact, GENOVESE never enrolled in or graduated from that institution.

c. GENOVESE claimed to the Investors that he had earned a master's degree in business administration from Dartmouth College's Tuck School of Business. In fact, GENOVESE never enrolled in or graduated from that institution.

d. GENOVESE claimed to the Investors that he was formerly a partner at the investment bank Goldman Sachs & Company ("Goldman Sachs"). In fact, GENOVESE was never employed by Goldman Sachs.

e. GENOVESE claimed to the Investors that he was formerly a portfolio manager at the investment bank Bear Stearns Companies ("Bear Stearns"). In fact, GENOVESE was never employed by Bear Stearns.

7. In addition to affirmative false representations, NICHOLAS JOSEPH GENOVESE, the defendant, also withheld material information from the Investors, including, among other things, that he had previously been convicted of several fraud-related

3

felony criminal offenses.     GENOVESE also withheld from the
Investors the fact that in or about 1999 he had filed for, and was
granted, bankruptcy protection pursuant to Chapter 7 of the United
States Bankruptcy Code.

8.    With respect to one of the Investors, Investor C,
NICHOLAS JOSEPH GENOVESE, the defendant, made additional false
representations to Investor C relating to a purported investment
opportunity in an initial public offering, as described more fully
below in Paragraphs 14 through 19.

### GENOVESE Obtains Investor Funds Through The Scheme

#### Investors A & B

9.    During the period from in or about September 2015 through
in or about January 2016, NICHOLAS JOSEPH GENOVESE, the defendant,
solicited approximately $4 million from Investor A and Investor B
in investments in the Willow Creek Hedge Fund based on material
misrepresentations and omissions by GENOVESE as set forth above in
Paragraphs 6 and 7.  GENOVESE made such solicitations through in-
person conversations and telephone conversations with each of
Investor A and Investor B, including conversations in which
GENOVESE was in New York, New York.

10.    In or about the fall of 2016, Investor B requested and
obtained from NICHOLAS JOSEPH GENOVESE, the defendant, a
withdrawal of $1 million of the $2 million that Investor A had
previously invested in the Willow Creek Hedge Fund.

4

11.   In or about May 2017, Investor A and Investor B were told by another investor in the Willow Creek Hedge Fund that NICHOLAS JOSEPH GENOVESE, the defendant, had a criminal record. Shortly thereafter, Investor A and Investor B requested a complete redemption of the remaining several million dollars that they had previously invested in the Willow Creek Hedge Fund.

12.   Although NICHOLAS JOSEPH GENOVESE, the defendant, initially promised to return those funds to Investor A and Investor by January 2018, those funds were never returned to Investor A and Investor B.

### Investor C

13.   During the period from in or about January 2017 through in or about October 2017, NICHOLAS JOSEPH GENOVESE, the defendant, solicited close to $2 million from Investor C in investments in the Willow Creek Hedge Fund based on material misrepresentations and omissions as set forth above in Paragraphs 6 and 7.  GENOVESE made such solicitations through in-person conversations, telephone conversations, cellphone text messages, and email communications with Investor C, including conversations in which GENOVESE was in New York, New York.

14.   Additionally, in or about June 2017, NICHOLAS JOSEPH GENOVESE, the defendant, fraudulently claimed to Investor C that the Willow Creek Hedge Fund had been given the opportunity to buy a tranche of millions of dollars' worth of stock, at about $8.00

per share, in an Internet software company called Pinterest before Pinterest had an initial public offering ("IPO") of its shares to the general investing public, and that the value of the stock would likely go up after the IPO. GENOVESE further claimed that if Investor C made an investment of $500,000 in the Willow Creek Hedge Fund, the Willow Creek Hedge Fund would use the funds to purchase pre-IPO shares of Pinterest for Investor C, and that Investor C could sell the Pinterest shares after the IPO and withdraw his investment and any gains from the Willow Creek Hedge Fund.

15. In or about June 2017, after NICHOLAS JOSEPH GENOVESE, the defendant, made false representations to Investor C about GENOVESE's background and educational and professional experience and about the opportunity to invest in pre-IPO shares of Pinterest, Investor C wired a total of approximately $500,000 in funds from two of his bank accounts to a bank account registered to Willow Creek Advisors, for the purchase of limited partnership interests in the Willow Creek Hedge Fund to invest through the Willow Creek Hedge Fund in pre-IPO shares of Pinterest.

16. On or about July 7, 2017, Investor C received an email from "Client Services" at Willow Creek Advisors stating: "Please see attached Final Term Sheet for the Special Offering of Pinterest that you purchased for your account. Please remember only funds located in Willow Creek Funds appear in your 'online account'. Your Pinterest shares will appear in your Quarterly statements

6

alongside any funds invested in Willow Creek Advisor Funds."

17. On or about August 29, 2017, Investor C received another email from "Client Services" at Willow Creek Advisors stating: "Our Compliance Department has informed us that your account only contains Special Offering assets worth $500,000.00. The SEC law is that all hedge fund accounts are a minimum of one million dollars to open an account." The email further stated: "You have two choices to come into compliance with the SEC rule. You can add 500,000.00 to your account or you can liquidate your assets."

18. Following that email, NICHOLAS JOSEPH GENOVESE, the defendant, had several conversations with Investor C in or about the fall of 2017 in which GENOVESE convinced Investor C to transfer funds totaling about $1.4 million from Investor C's Individual Retirement Account ("IRA") to a bank account registered to Willow Creek Advisors in New York for the purported purpose of protecting Investor C's supposed investment in pre-IPO shares of Pinterest. GENOVESE claimed in such conversations with Investor C that the value of the pre-IPO shares of Pinterest would increase dramatically after Pinterest's anticipated IPO. For example, in a text message conversation between GENOVESE and Investor C on or about November 29, 2017, in response to questions from Investor C about Pinterest, GENOVESE wrote that "[t]his thing could quadruple . . . [j]ust on IPO."

19. In fact, NICHOLAS JOSEPH GENOVESE, the defendant, never

7

used any of the funds provided by Investor C to purchase pre-IPO shares of Pinterest.

## Statutory Allegations

20. From at least in or about 2015 through at least on or about February 2, 2018, in the Southern District of New York and elsewhere, NICHOLAS JOSEPH GENOVESE, the defendant, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, used and employed manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, GENOVESE solicited millions of dollars in investments in the Willow Creek Hedge Fund through fraudulent misrepresentations and omissions.

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2.)

### COUNT TWO
### (Wire Fraud)

The Grand Jury further charges:

21. The allegations contained in Paragraphs 1 through 19 of this Indictment are repeated, realleged, and incorporated by reference as if fully set forth herein.

22. From at least in or about 2015 through at least on or about February 2, 2018, in the Southern District of New York and elsewhere, NICHOLAS JOSEPH GENOVESE, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, GENOVESE solicited millions of dollars in investments in the Willow Creek Hedge Fund through fraudulent misrepresentations and omissions and carried out this scheme through various telephone calls, wire transfers, and other wire communications.

(Title 18, United States Code, Sections 1343 and 2.)

**FORFEITURE ALLEGATION**

23. As a result of committing one or more of the offenses charged in Counts One and Two of this Indictment, NICHOLAS JOSEPH GENOVESE, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses.

**Substitute Assets Provision**

24. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable

10

property described above.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853;
Title 28, United States Code, Section 2461.)

FOREPERSON

GEOFFREY S. BERMAN
United States Attorney

11

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

**- v. -**

**NICHOLAS JOSEPH GENOVESE,**

**Defendant.**

**INDICTMENT**

18 Cr. _____

(15 U.S.C. §§ 78j(b) & 78ff; 17 C.F.R. §
240.10b-5; and 18 U.S.C. §§ 2 & 1343.)

GEOFFREY S. BERMAN
United States Attorney.

**A TRUE BILL**

Foreperson.

3/1/18        Filed Indictment
              Case assigned to Judge Pauley        USMJ Gorenstein MG