UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------

UNITED STATES OF AMERICA,

    -against-

NICHOLAS GENOVESE,

                   Defendant.

18cr183

MEMORANDUM & ORDER

------------------------------

WILLIAM H. PAULEY III, Senior United States District Judge:

        Nicholas Genovese moves for a reduction of his term of imprisonment under the federal compassionate release statute, 18 U.S.C. § 3582(c)(1)(A). Genovese contends that, if he contracts COVID-19 while incarcerated, he faces a heightened risk of serious illness because of his underlying medical conditions. He asks this Court to: (1) reduce his 140-month term of imprisonment to time served, and (2) convert the outstanding balance of his sentence to supervised release with a condition of home confinement. For the following reasons, Genovese's motion is denied.

## BACKGROUND

        In October 2018, Genovese pled guilty to one count of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2. (ECF No. 22 ("Plea Tr."), at 20.) Sentencing was originally scheduled for February 15, 2019 but was adjourned numerous times as Genovese retained and discharged various counsel. On February 11, 2020, this Court sentenced Genovese principally to 140 months of imprisonment. (ECF No. 81 ("Sentencing Tr."), at 82.) Genovese timely filed a notice of appeal challenging his conviction. (ECF No. 66.) That appeal is pending in the Second Circuit.

Genovese is 55 years old and suffers from asthma.  (ECF No. 89-4.)  He is currently incarcerated at the Metropolitan Detention Center ("MDC") in Brooklyn, New York, and has served roughly 29 months of his 140-month sentence.  (ECF No. 86 ("Government Opp'n"), at 11.)  His projected release date is January 11, 2028.

On March 27, 2020, Genovese submitted an administrative request to the warden at MDC seeking compassionate release in light of the COVID-19 pandemic, his age, and his pre-existing medical conditions.  (ECF No. 89-4.)  The warden at MDC denied Genovese's request for compassionate release on April 19, 2020.  (Government Opp'n, at 17.)

DISCUSSION

I.    Jurisdiction

To begin, this Court lacks jurisdiction to decide Genovese's motion.  "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982).  "That rule applies in criminal cases."  United States v. Ransom, 866 F.2d 574, 575 (2d Cir. 1989) (per curiam).  And while that "rule does not preclude a district court . . . from correcting clerical errors," the Second Circuit has "not relaxed the rule to the point of permitting substantive modifications of judgments."  Ransom, 866 F.2d at 575–76 (citation and quotation marks omitted); see also United States v. Viola, 555 F. App'x 57, 59–60 (2d Cir. 2014) (summary order).  Accordingly, "[o]nce [Genovese] filed his notice of appeal . . . jurisdiction over the questions raised in his § 3582(c) motion transferred to the Second Circuit."  United States v. Martin, 2020 WL 1819961, at *2 (S.D.N.Y. Apr. 10, 2020); see also United States v. Rosario, 2020 WL 3100461, at *1 (S.D.N.Y. June 11, 2020); United States v. Skelos, 2020 WL 2508739,

2

at *1 (S.D.N.Y. May 15, 2020); United States v. Vigna, 2020 WL 1900495, at *3 (S.D.N.Y. Apr. 17, 2020).

However, where "a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending," Federal Rule of Criminal Procedure 37 permits the district court to: "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a). The advisory committee notes for Rule 37 list "motions under 18 U.S.C. § 3582(c)" as one of the types of motions for which the drafters "anticipate[] that Criminal Rule 37 will be used primarily[,] if not exclusively." Fed. R. Crim. P. 37 advisory committee's notes to 2012 adoption. If not for Genovese's pending appeal, this Court would deny his motion for compassionate release. Thus—in the interest of judicial economy—this Court reaches the merits of Genovese's motion. See Skelos, 2020 WL 2508739, at *2 (denying motion for compassionate release on the merits pursuant to Rule 37); Martin, 2020 WL 1819961, at *2–4 (same).

II.      Compassionate Release and the First Step Act, Generally

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). The federal compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), is one such exception to this general rule. Indeed, § 3582(c)(1)(A) permits a court to "reduce" a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Even if "extraordinary and compelling reasons" exist, the court must also weigh the factors set forth in 18 U.SC. § 3553(a) to determine whether release is warranted.

Until recently, the statute permitted a court to consider reducing a defendant's sentence only "[u]pon motion of the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13. However, the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194, "created an independent avenue for defendants to seek relief from the federal courts." United States v. Ebbers, 432 F. Supp. 3d 421, 423 (S.D.N.Y. 2020). Now, courts may also consider these requests "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A) (emphasis added).

III.　　Application

　　A. Exhaustion

This Court need not wade into the exhaustion question because more than 30 days have lapsed since the warden of MDC received Genovese's petition for compassionate release. See United States v. Saleh, 2020 WL 3839626, at *2 (S.D.N.Y. July 8, 2020); United States v. Haney, 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020).

　　B. Existence of "Extraordinary and Compelling Reasons" Warranting Reduction

Next, this Court assesses whether Genovese presents "extraordinary and compelling reasons" warranting a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). "Congress has delegated authority to the Sentencing Commission . . . to 'describe what should be considered extraordinary and compelling reasons for sentence reduction.'" Ebbers, 432 F. Supp. 3d at 427 (quoting 28 U.S.C. § 994(t)). Here, the relevant Sentencing Commission policy statement is U.S. Sentencing Guidelines § 1B1.13 (the "Policy Statement").

Application Note 1 to the Policy Statement states, in pertinent part, that extraordinary and compelling reasons exist when:

(A) Medical Condition of the Defendant . . .

    (ii) The defendant is —

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. . . .

(D) Other Reasons. — As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

While the Policy Statement pre-dates the First Step Act's procedural changes, the amendments to the compassionate release statute "grant this Court the same discretion as that previously give[n] to the BOP Director, and therefore the Court may independently evaluate whether [a defendant] has raised an extraordinary and compelling reason for compassionate release" under the "catch-all" provision. United States v. Lisi, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020); see also United States v. Olszewski, 2020 WL 2420483, at *2 (S.D.N.Y. May 12, 2020); United States v. Daugerdas, 2020 WL 2097653, at *2 (S.D.N.Y. May 1, 2020). Nonetheless, "U.S.S.G. § 1B1.13's descriptions of 'extraordinary and compelling reasons,'" Ebbers, 432 F. Supp. 3d at 427, provide helpful guidance for considering motions for compassionate release, Lisi, 2020 WL 881994, at *3 (citation omitted).

This Court—along with other judges in this district—has found that the increased risk of COVID-19 in prison settings, coupled with a defendant's pre-existing medical conditions

5

and advanced age, may create "extraordinary and compelling reasons" under the Policy Statement.  See, e.g., Daugerdas, 2020 WL 2097653, at *3 (finding extraordinary and compelling reasons under the Policy Statement for a 69-year-old defendant who "suffers from Type 2 diabetes, obesity, hypertension, and high cholesterol"); United States v. Scparta, 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) (granting compassionate release for defendant suffering from "multiple medical issues that make him especially vulnerable to complications from COVID-19," including hypertension, sleep apnea, and high cholesterol).  Here, Genovese contends—and the Government does not dispute—that he suffers from asthma, which may expose individuals to a heightened risk of serious illness from COVID-19.[1]  (Emergency Mot. for Compassionate Release, ECF No. 89 ("Compassionate Release Mot."), at 1.)  For that reason, the Government concedes that Genovese has offered an "extraordinary and compelling reason[]" for release under the Policy Statement.  (Government Opp'n, at 17.)

        However, this Court need not determine whether Genovese presents an "extraordinary and compelling reason[]" warranting release because his motion fails for other reasons.  Indeed, before granting compassionate release, the Policy Statement requires a court to find that "[t]he defendant is not a danger to the safety of any other person or to the community." U.S.S.G § 1B1.13(2).  But this Court cannot make that finding because Genovese is plainly "a danger to the community[] [and] truly a predator." (Sentencing Tr., at 82.)  At sentencing, this Court aptly labeled him a "serial fraudster," whose record reflects "17 arrests and nine convictions," nearly "all of [which] relate to fraud of one kind or another, with the dollar amounts escalating each time." (Sentencing Tr., at 78.)  This Court also expressed its "concern[]

---

[1]     See Groups at Higher Risk for Severe Illness, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last updated June 25, 2020).

that when Mr. Genovese is released from prison," he will "concoct another more outrageous scheme because that's been his trajectory . . . ." (Sentencing Tr., at 82.)

Genovese's motion does nothing to assuage this Court's concern that he will recidivate. Frankly, it would strain credulity to conclude that Genovese is no longer a danger to the community merely because—as Genovese submits—he has exhibited good behavior while incarcerated and "earned a certificate for teaching business-related classes to fellow inmates." (Compassionate Release Mot., at 3 (quotation marks omitted).) Because Genovese is a danger to the community, his motion for compassionate release is denied. See United States v. Burman, 2020 WL 3182766, at *5 (S.D.N.Y. June 13, 2020) (denying compassionate release to defendant who committed several fraud-related offenses because he remained a danger to the community); United States v. Meli, 2020 WL 2114769, at *2 (S.D.N.Y. May 4, 2020) ("[R]eleasing Defendant would be contrary to the Sentencing Commission's directive that courts should deny compassionate release to defendants who pose a danger to their communities" because "Defendant's fraud scheme lasted over a year and caused grave financial and emotional harm to his many victims.").

    C.  Section 3553(a) Factors

Moreover, even if this Court were to conclude that Genovese is not a danger to the community, it would need to "consider[] the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A). Those factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" (3) "the kinds of sentences available;" (4) the Guidelines ranges; (5) "any pertinent policy statement;" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records;" and (7) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

Application of the § 3553(a) factors requires an assessment of whether the relevant factors "outweigh the 'extraordinary and compelling reasons' warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence." Ebbers, 432 F. Supp. 3d at 430–31.  "Court[s] should be wary of using [a] motion [for compassionate release] to 'correct' the sentencing court's original judgment or introduce unprincipled variance into the execution of duly-imposed sentences . . . ." Ebbers, 432 F. Supp. 3d at 430.

Here, the relevant § 3553(a) factors weigh against granting Genovese's motion. Stated simply, Genovese's criminal conduct was abhorrent.  He convinced unsuspecting victims to entrust their savings with his bogus investment firm, Willow Creek Advisors LLC.  (See PSR ¶¶ 2, 9, 19, 28.)  To gain their trust, Genovese lied to his victims.  He claimed to be an heir to the Genovese Drug Stores family fortune and a graduate of Dartmouth College's Tuck School of Business.  (PSR ¶¶ 11–12.)  And he fabricated his employment history, claiming he previously worked at Goldman Sachs and Bear Stearns.  (PSR ¶ 13.)  Rather than manage his victims' money, Genovese squandered it on—among other things—luxury boats and rental cars, a private chauffer, a $50,000 gala table at the New York Philharmonic, and numerous vacations.  (PSR ¶¶ 130–31; ECF No. 62, at 5.)  As part of his plea agreement, Genovese stipulated to a restitution obligation of $13,230,811.  (PSR ¶ 5(m).)  However, several of Genovese's victims—some of whom wrote letters to this Court opposing his motion, (ECF Nos. 87, 88)—now face uncertain financial futures with little hope of recouping their losses, (Sentencing Tr., at 19–20, 24).  In short, the breadth and cruelty of Genovese's fraudulent scheme necessitated the 140-month sentence.  Granting his motion for compassionate release would do little to "promote respect for the law" or "provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).

Finally, it bears repeating that Genovese's scheme was the latest chapter in an escalating saga of fraudulent conduct spanning decades. His prior custodial sentences include: (1) a 10-month sentence in Illinois for credit card fraud, (2) concurrent 30-month sentences in Illinois for misusing credit cards, and (3) concurrent sentences of 36-to-72 months in New York for fraud-related crimes. (PSR ¶¶ 59–64, 71–77.) Those terms of imprisonment did not deter Genovese. If this Court were to grant his motion, it would only unleash Genovese to engage in future fraudulent conduct and frustrate the need for specific deterrence.

## CONCLUSION

For the foregoing reasons, Genovese's motion for compassionate release is denied. The Clerk of Court is directed to terminate the motion pending at ECF No. 89.

Dated: July 15, 2020
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.