UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
          :
UNITED STATES OF AMERICA          :
          :
      -v-          :      18-CR-183 (JMF)
          :
NICHOLAS JOSEPH GENOVESE,          :      ORDER
          :
      Defendant.          :
          :
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      The Court received the attached reply in support of Defendant's motion pursuant to 28 U.S.C. § 2255. The Court has redacted the names of certain third parties on the ground that their privacy interests outweigh the interest in public access. The Court will file and maintain the unredacted copy of the reply under seal.

      The Clerk of Court is directed to mail a copy of this Order to:

          Nicholas J. Genovese
          Register No. 17079-104
          FCI Cumberland
          Federal Correctional Institution
          P.O. Box 1000
          Cumberland, MD  21501

SO ORDERED.

Dated: October 20, 2022
      New York, New York          _____
                                JESSE M. FURMAN
                                United States District Judge

RECEIVED
SDNY PRO SE OFFICE

2022 OCT 19 PM 2: 32

MEMORANDUM IN RESPONSE & OPPOSITION TO THE GOV'TS MAY 23, 2022 RESPONSE
UNDER 28 U.S.C. 2255
TO VACATE, SET ASIDE, OR CORRECT GENOVESE'S SENTENCE

NICHOLAS J. GENOVESE
REG# 17079-104
FPC CUMBERLAND
P.O. BOX 1000
CUMBERLAND, MD 21501

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

NICHOLAS JOSEPH GENOVESE et. al.,
    Movant

v.
                                              ~~DOCKET # 18-CR-0183-1~~
                                              DOCKET # 22-CV-0800

UNITED STATES
    Respondent

## RESPONSE TO THE GOV'TS SUBMISSION ON THE MERITS TO MOVANTS 2255

Now comes, Nicholas J. Genovese, Movant in the above captioned matter, proceeding Pro-Se due to the Court denying Movant court appointed counsel (ECF 146), and in Response to this honorable courts order, and for the Movants Response & Objection to the Governments Response dated May 20, 2022.

I am asking the court to Vacate, Set Aside, or Correct my sentence for the reasons below.

In the Gov't/Moroney's submission dated May 20, 2022, Moroney concurred with my former counsel Mr. Pittel, that the Motion is not time barred. Mr. Pittel correctly filed with the court (April 18, 2022) laying out why Genovese's Plea does not bar him from filing the 2255. I will let his filing speak for itself.

Now to respond to the gov't submission in relation to Ground 1;

Lets start from the very beginning. I've retained 4 different attorneys of which 3 were paid for by my family (Mr. Little, Mr. Halpern, Mr. Eisemann), one was court appointed (Mr. Scholar).
    Mr. Little gave my family a flat rate that was supposed to include the entire case, of which my family paid his fee. When it came to the case he only worked on it minimally. He gave faulty advice on forfeiture, but more importantly he gave me false information in order to induce me to sign a Plea Agreement that I didn't even understand, which was Ineffective assistance of counsel and when it came to actually getting prepared for sentencing he cited a false conflict and recused himself as counsel, thus breaking our contract and causing Genovese to find new counsel.

    Mr. Halpern was subsequently retained and his counsel was even worse. At that point Genovese had already been duped by Mr. Little to sign the Plea Agreement that I didn't understand nor the particulars of the 4 point enhancement, the offense level and the criminal history category. Mr. Halpern then proceeded to break his contract of a fixed fee and start billing my family for 100 times what we had signed for. Mr. Halpern started to have unauthorized communications with the Gov't at which time I realized it had already damaged my defense. His Ineffective Assistance of Counsel was clear and destructive. At this point I was close to sentencing and I had to retain new counsel.

    Mr. Eisemann was retained for a flat fee and proceeded to to get up to speed in the case but as he has never defended a financial case of any kind he was very lost and never grasped the actual details of the case nor the important issues like the 4 point Investment Adviser Enhancement. Trying to get Eisemann to understand how a Hedge Fund operated and familiarize himself with the details of the case was extremely difficult and he never did understand it. Eisemann also did not prepare the sentencing documents in time for me to review the drafts and make essential changes to them, as well as that I never received the PSR to go over with him nor did I receive the Gov't own Sentencing Memorandum.

As evidenced in my 2/7/2020 letter that I sent to Judge Pauley, I expressed my frustration and horror as the deadline for sentencing approached and nothing had been done by Eisemann. I had not received a Draft Sentencing Memorandum or a Final Sentencing Memorandum from Eisemann. Nor did I receive a copy of the Governments Sentencing Memorandum to read and to prepare a rebuttal. I also did not see the changes Eisemann was supposed to make of my letter that I wrote to Judge

Page 1

Pauley. I also did not receive a copy of the PSR change or updated as was my legal right 1 week before sentencing.

On page 6 of of the Gov'ts submission, Moroney states that Genovese has come nowhere close to identifying any prejudice suffered. To say this was not prejudicial is ignorant of the evidence and the transcript of Judge Pauley's testimony and of Eisenmann's testimony. Judge Pauley could have sentenced me below the guidelines or at the low end, yet Pauley sentenced me higher than even what Probation and the PSR asked for.

Moroney falsely states that I have not challenged my conviction. I would like to remind everyone that there is a form to file a 2255 in the SDNY, I filled out the form according to the questions asked and abided by the Second Circuit's instruction to not quote case law. It should be quite evident that I am challenging the conviction and gross over-sentence as I list the reason for Ineffective Assistance of Counsel in my Grounds 1-3, as required in the Sec. Cir. 2255 instructions.

Now, I am not an attorney, but as I was denied counsel by Judge Furman to respond to the Gov'ts Submission in his order dated (7-19-22 ECF 146) I am doing my best as a Pro-Se I would ask that your honor take this into consideration. Pro-Se complaints are held to less stringent standards than pleadings drafted by attorneys and the Court is required to read the plaintiff's Pro-Se complaint liberally and interpret it raising the strongest arguments it suggests. Erickson v. Pardus, 551 US 89, 127 S.Ct. 2197, 167 L.Ed. 2d 1081(2007).

Moroney's assertion (page 6) that Defendant has not come anywhere close to identifying any prejudice he suffered couldn't be further from the truth. We expect the Gov't to take this position 100% of the time In any case whatsoever, regardless of the facts and evidence indicating otherwise.

Genovese has suffered real and substantial prejudice from his many counsels Ineffective Assistance of Counsel that his family could barely afford. This is real money that my family earned through hard honest work and yet these attorneys effectively stole my family's money and did the bare minimum to get by rather than provide what they were paid for, an effective professional defense.

Moroney's statement (pg6) "His sentencing fully complied with FRCP 32 and the within the guidelines sentence Genovese received...") This statement is absolutely ridiculous, as if to say "oh the Bank robber stopped at all the stop signs on the way to rob the bank so he committed no infractions. This statement alone shows the Gov't decision not to follow the facts and evidence. Is the Gov't protecting the Bonus? Do they actually get reversals of Bonus's ever? I highly doubt that.
The gross over-sentencing due to continuous Ineffective Assistance of Counsel created this unwarranted sentence that is no where near supported by the facts.

It is well established that a defendant is entitled to adequate and competent legal representation under the Sixth Amendment. Yet none of the counsels who represented Genovese provided adequate and competent legal representation.

In Abrahamson ( Abrahamson v. Fleschner, 568 F.2d 862, 870 (2d Cir 1977)),the Judge held that since plaintiffs had realized a net profit on their overall investments they had failed to prove damages compensable under the federal Security Laws. The same holds true for Colony Hills Capital, who not only received their entire investment back but also a net profit on their investment. As such the 'Undisclosed Letter' (ex Parte Communication) and its substantial weight given it at sentencing should be clear due to the above fact and secondly on the basis of Ineffective Assistance of Counsel and third, because Pauley completely and blatantly disregarded Brady v. Maryland by not disclosing this 'Undisclosed Letter' Ex Parte communication immediately upon receipt of the letter. The three points above show the Ineffective Assistance of Counsel and substantial prejudice suffered by Genovese.
Additionally the requirement of fraud in connection with the purchase or sale of a security is NOT satisfied by an allegation that said investors were induced fraudulently not to sell their securities.

Moroney goes on to falsely state (pg 15), that Exhibit A of the 2255 filing "Letter to Judge Pauley" dated and sent First Class U.S. Mail from MDC Brooklyn Detention center four days before sentencing, that apparently it was a Draft and not sent. That letter was NOT a draft, it was a Final letter and it was mailed First Class postage paid from MDC Brooklyn on 2-7-2020 as evidenced by the Legal Mail Log Book kept by the corrections officer for that wing (wing 63). If needed Moroney can subpoena that record to satisfy his false statement.

Page 2

Cont'd

Moroney's statement (pg 15 last para) "At no point did Genovese challenge counsels representation" is completely irrelevant. I have been in Investment Banking for over twenty years at no time was I schooled or employed as a criminal defense attorney, thus I have no idea what is supposed to happen in a sentencing. This is why my family paid over a hundred thousand dollars to an attorney to defend me. Who would have known that defense attorneys are perpetrating the most egregious frauds by taking client money and not doing any semblance of basic legal representation.
Yet at my speech to the court I outlined in detail how all three attorneys retained by my family have defrauded us of hundreds of thousands of dollars and have not performed a basic defense nor ever attempted to familiarize oneself with my case.

Moroney goes on to state (pg 15 last 3 lines) "if in fact Genovese had never see a copy of the PSR..." This is why every Federal Judge in the United States of America asks the Defendant at the very beginning of a Sentencing "Did you review the PSR with your client and provide him a copy?" When the attorney DOESN'T say yes at that point any mentally capable Judge will immediately stop the sentencing so the defendant, who is about to be sentenced, in my case to 15% of his Natural Life, can be afforded the opportunity to review the PSR, make factual changes so the Court will have the accurate facts to complete Sentencing. Pauley did NOT afford me that chance. Which was Plain Error and prejudicial to Genovese.

Moroney's statement (pg 16 2nd para) The notion that counsel was unfamiliar with the facts of Genovese's case is belied by the record." is typical US Attorney boilerplate answers. May I remind the Court that I never received (exhibit A in the 2255) ANY sentencing material from Eisemann until the very day of sentencing in court in a holding cell moments from being sentenced.

I had no chance whatsoever to read the sentencing material, Moroney: "the counsel submitted over 50 pages..." in reality it was handed to me moments before I was walked into the courtroom.

Lets set the record straight on Ground Two. As I outlined in my letter, dated and sent 2-7-2020 FOUR days before sentencing, to Judge Pauley I specifically detailed Eisemanns incompetence and lack of communication to go over the case so Eisemann has the facts correct and is familiar with and understands the case, so he may use his defense knowledge and skills to the best defense possible.

Yet, I never received a Draft Sentencing Memorandum or a Final Sentencing Memorandum, nor had I been given a copy of the Govt's Sentencing memorandum. I also did not see a final draft of my Personal Sentencing Letter to Judge Pauley. I did not receive or see a copy of the changed and Updated PSR as is my legal right a week BEFORE sentencing. So to rebut Moroney's statement that " The record belies this", yes Eisemann typed up many pages of which I received from him barely moments before being walked into the courtroom. I'm a very good reader but reading over 100 pages in five minutes that a defendant normally gets months to read is beyond my ability and is gross negligence on Eisemann's part and is in fact Ineffective Assistance of Counsel.
   Once I read Eisemanns submission I couldn't believe my eyes. The loss dollar amounts were wrong on all of his filings amongst many other facts that were not even mentioned or were wrong. Had I been given the chance that most defendants have to get to review the drafts of the Sentencing Memorandum and PSR many things would have changed and the facts properly portrayed. Including the false and materially incorrect Items in the PSR.

Moroney goes on to falsely claim (pg 16 last para) that Genovese "has not identified any substantial inaccuracies in the PSR that caused him Prejudice."

Page 3

Cont'd

The real kicker here is the very next sentence by Moroney" His only attempt to do so is an assertion that the PSR showed four cases as open or unknown status, when in fact they are all resolved cases as time served or dismissed" !
That last sentence by Moroney alone shows the Plain Error and the the prejudice that Genovese has suffered. The Gov't admitted in that sentence that the PSR was seriously flawed with inaccuracies. Had I seen a PSR and had I had competent counsel, this would or should have been corrected BEFORE sentencing.

Moroney goes on to state "Each of these purportedly "open" cases are tied to arrests that took place 20 years or more before Genovese's sentence." Purportedly? Yes the PSR states clearly and falsely that they are OPEN cases and Judge Pauley, as required in assessing 3553 factors, used this false information in the PSR to sentence me to 15% of my natural life span. Judge Pauley used this inaccurate PSR to also DENY my Compassionate Release Motion and then Judge Furman used the exact same PSR to DENY my Compassionate Release Motion as well.

The Bureau of Prisons, utilizes inmate/defendants PSR's to do many things such as Security Classification, and to DENY programs that can generate GTC Good Time Credits and more recently the CARES Act releases and FSA First Step Act Credits for early release. Because of this materially inaccurate PSR I was ineligible for release via the CARES Act or upon receiving my First Step Act credits. Now that's real and substantial Prejudice as well.

Moroney continues, quoting US. v Turner No. 2:03 CR 147, 2009 WL 396063, at *3CD. Vt. Feb. 17 2009) ("Without any details about the alleged factual errors in the PSR, the court cannot determine whether the failure to address those errors fell below an objective standard of reasonableness.")

How does Moroney type this quote, when in his previous paragraph he lists the exact details of the many errors and material inaccuracies specifically the Criminal History that is all incorrect, and then he states Genovese failed to identify any errors in the PSR ?
No where in the Federal Criminal Code or FRCP have I read that the Criminal History listed in the PSR has no bearing or weight on how much time a Judge will sentence a defendant to. Yet Moroney would have you believe his preposterous statement (pg 17 Line 15 & 16) "So too here where Genovese has failed to identify any error in the PSR--much less any that would have reasonably led to a different sentence..." The false appearance of these cases showing as Open/Unresolved status weighed heavily in Judge Pauleys sentencing as is his responsibility under the 3553 factors.

The many superfluous errors in the PSR that Eisemann attempted to correct ad-hoc during sentencing because he had not reviewed the PSR nor provided me a copy, is poignantly highlighted when Judge Pauley states (Tr pg 7. Line 5) " The Court: Why weren't these issues raised with Probation?"

Well to answer Pauley, that's because no one, not Eisemann, not Genovese even read the PSR because Genovese never received a copy of the PSR and Eisemann never reviewed it with Genovese. Eisemann didn't review the PSR until shortly before the sentencing where he attempted to make changes on an Ad-Hoc basis further evidencing the prejudice and clear Ineffective Assistance of Counsel.

The fact that Pauley sentenced Genovese with a materially incorrect PSR, totally incorrect Criminal History, and missing Employment History is reprehensible, is Plain Error and as evidenced by the transcript, is Prejudicial to Genovese.

If I can quote the Judges responsibility in sentencing using the 3553 factors;
At the very top of the page of 3553 Imposition of a Sentence specifically 3553 (a)(1) " The nature and circumstances of the offense And the HISTORY and characteristics of the defendant". The very start of 3553 lists the Judges responsibility to take defendants History into account in deciding on a sentence. For Moroney to state that the materially inaccurate PSR would not have affected the outcome, completely disregards the Judges sentencing obligation to take Criminal History & Employment History and other facts about defendant into account.

.

.

Page 4

Cont'd

In Ground 2 Moroney doesn't even attempt to address the "Joint Letter" because he knows this is crystal clear evidence of more Ineffective Assistance of Counsel. Eisemann attempted to make a few ad-hoc changes to the PSR with which he was just reading and then realized that there were too many inaccuracies to go through during sentencing and then Eisemann proposed to DEFER this and construct a "Joint Letter" between him and the AUSA Enzer to send at a LATER DATE !!! The Sentencing was that day ! Pauley will be sentencing Genovese that day not in the future. This is clear Ineffective Assistance of Counsel and Pauley should have known from the very beginning, when Eisemann admitted on the record that he had not reviewed the PSR nor given a copy to Genovese, that creating a Joint Letter and submitting AFTER Sentencing would clearly prejudice Genovese.

The Joint Letter agreed to in court was NEVER even submitted to Pauley or docketed.

This continued the pattern of Ineffective Assistance of Counsel and a complete failure of Eisemanns representation of Genovese. As this pattern continues, it is clear that Eisemanns representation of Genovese "fell below the objective standard of reasonableness" based on "prevailing professional norms" and that "there is a reasonable probability that, but for Eisemanns unprofessional errors Genovese would have received a more favorable sentence.

Moroney goes on to state (pg 17 line 4) "The fact that these arrests were unresolved did not come up in any way during Genovese's sentencing." Of course they didn't come up because Pauley was using the widest brush he could to take my entire materially incorrect criminal history and paint it as if I was a mass murderer. Did Pauley make any reference to Genovese's criminal record during Sentencing? The answer is YES. Pauley goes on to state (Sen. Tr. pg 78 line 25, Pg 79 Line 1) " Court: His prior arrests and convictions 'are Relevant' to this courts individualized assessment under 3553(a)"

Moroney falsely states throughout the Gov'ts Submission that everything was in compliance with Rule 32 Sentencing & Judgement. This is incorrect. In 32 (d)(2)(i) it reads Additional information: The presentence report must also contain the following; (A) (i) any prior criminal record;". The criminal record reflected in the PSR is materially incorrect as admitted by Moroney in his Submission.
Rule 32 goes on 32 (e)(2) Minimum Required Notice. The Probation officer must give the presentence report to the defendant, the defendant's attorney, and an attorney for the Gov't at least 35 days BEFORE sentencing unless the defendant waives this minimum period.
Genovese did not receive a PSR whatsoever from probation or from Eisemann. Rule 32 goes on, 32(g) Submitting the Report. At least 7 days before sentencing, the probation officer must submit to the court and to the parties the presentence report....".
Once again Genovese did not receive anything from Eisemann or Probation 7 days before sentencing.

The PSR's material inaccuracies are many, as evidenced (Tr. pg 45 L 14- Pg 46 L 8) "Where Eisemann repeatedly states Genovese's legitimate productive employment history, yet Pauley keeps asking Eisemann "where is that in the PSR?" Eisemann in that exchange several times states that none of his employment history is in the PSR. This is further Ineffective Assistance of Counsel for Eisemann to not have ensured the employment history was correct and accurate in the PSR. This is prejudicial to Genovese.

In FRCP 32(i)(1)(A) it reads" The Court: (A) must verify that the defendant and the defendants attorney have read and discussed the presentence report and any addendum to the report;"
Pauley asked Eisemann in court the day of sentencing (Tr. pg 2 lines 22-24) "Court: Have you reviewed the Presentence Investigation report with your client?" Eisemann:" I did not review it with him...".
That's Plain Error.
The courts failure to ensure that Genovese read and discussed the PSR with counsel as required is Plain Error. United States v. Brown, 651 Fed. Appx. 653 (9th Cir. 2016)

In view of the significance of the sentencing procedure, "it is of the utmost importance not only that justice be done but that it appear to be done." United States v. Wolfson, 634 F.2d 1323 (9th Cir. 1981), cert. denied, 452 U.S. 920, 101 S.Ct. 3059, 69 L. Ed. 2d 425 (1980); see also Haller v. Robbins, 409 F. 2d 857, 859 (1st Cir. 1969).

In United States v. Curran 926 F.2d 59; 1991 Lexis 2253, "The District courts reliance on certain information violated Fed. R. Crim.P. 32 and the Due Process Clause of the United States Constitution. When a court imposed a heavier sentence on defendant than that recommended by the Gov't, the appearance that it was due to a reliance on certain letters provided to the Court, but NOT to defendant or his counsel, was not harmless error. The court held that because the sentencing risked at least

Page 5

an appearance of impropriety, it was not harmless error under Fed. R. Crim. P. 32 and ordered that defendant was to be resentenced before a different judge."

Ground 3 Undisclosed Letter - Ex Parte Communication

Moroney's playing semantics here (pg 17) when he quotes Pauley from the transcript and then loosely adds to the meaning of the Letter submitted in question. Lets be clear, the exact quote is (pg 10 Line 1-2) (Exhibit F in the 2255) Court:"their law firm sent a letter to me."
Pauley did NOT say it was a 'victim letter', he said "a letter". We have no idea what this letter was. There is no document or letter docketed by Judge Pauley's Chambers in the record. Nor did any of my counsels receive a copy of "a letter" from Judge Pauleys Chambers.
Moroney goes on to falsely state & assume (pg 18) that the letter filed 1/14/19 ECF 24, was filed by the Court and that this letter was the letter that Pauley was referring to. That's great fiction but it defies any veracity, given the statement in the record by Judge Pauley. In reality ECF 24 was filed by the U.S.Atty's office, NOT the Court. The fact remains that this Undisclosed Letter was never docketed, nor given to any of my counsels or myself.

"A District Court abuses its discretion and imposes an unreasonable sentence when it fails to consider a relevant and significant factor, gives a significant weight to an irrelevant or improper factor, or considers the appropriate factors but commits a clear error of judgement in weighing those factors." United States v. Miner, 544 F.3d 930, 932 (8th Cir. 2008).

The District Courts reliance on the Ex Parte communications to determine defendants sentence was clearly Plain Error.

In United States v. Hayes, 171 F.3d 389; 1999 Lexis 4836, the District Court prejudiced defendants rights when it improperly relied on ex parte communications from victims of the crime in determining his sentence. The U.S. Constitution Amend. V requires that no person be deprived of liberty without Due process of law. Fed. R. Crim. P. 32 protects the right to Due process by requiring disclosure of most information relied upon at sentencing. The purpose of the rule is promote focused, adversarial resolution of the legal and factual issues relevant to fixing United States Guidelines Sentences.

Notice and Opportunity to be heard are the core of Due process. Fed. R. Crim. P. 32 requires that the defendant must have the opportunity to review information that will be used for sentencing. Though rule 32(b)(6) only expressly deals with the right to review the presentence investigation report, the right to review other information relied on by a court at sentencing is implicit in the adversarial scheme created by rule 32 and in the requirement of rule 32 (c)(1) that both counsel for the defendant and the Gov't must be provided an opportunity to comment on the probation officers determination and on other matters related to the appropriate sentence.

Page 6

Cont'd

Even when it is necessary to exclude information from the presentence report for reasons of confidentiality, the sentencing court must summarize in writing any information upon which it relies, and the defendant must have a reasonable opportunity to comment on the information.

Evidence used at sentencing may not be kept from the defendant simply by failing to incorporate it into the presentence report. In United States v. Patrick , 988 F.2d 641, 647 (6th Cir), cert. denied, 510 U.S. 845, 126 L. Ed. 2d 99, 114 S.Ct. 136(1993), we cannot accept on faith the Gov'ts assertion that the letter is similar to evidence presented at trial. The District Court did not read the letters into the record or even have them in the courtroom during the sentencing hearing.

United States v. Atkinson, 297 U.S. 157,160, 80L. Ed. 555, 56 S.Ct. 391 (1936)) The use of Undisclosed Evidence against a criminal defendant, without the safeguards of Rule 32(c)(3)(A), is the type of error that may undermine the fairness of a proceeding and that certainly tarnishes the public reputation of judicial proceedings.

"... circuit courts have found that a District Court's reliance at sentencing on 'material information not disclosed' in advance to a defendant violates the Rule 32 process.  United States v. Hamad, 495 F. 3d 241, 243-44 (6ht Cir. 2007)( confidential letters denouncing defendant); Nappi, 243 F.3d at 764. The error is Plain.

Moroney goes on to cloud the topic further by stating "Pauley however declined to strike from the PSR the following statement "To date one victim, Colony Hills...". No where in Judge Pauleys statement does he state the letter he just mentioned is this letter one and the same.
Once again further into the paragraph (pg 18) Moroney tries to falsely attach the letter Pauley mentions to a letter filed by the U.S. Atty's office a year previously. In the second paragraph (pg 18) Moroney states "Genovese cannot establish prejudice from the fact that he did not previously review the letter." Once again the Ex Parte communication 'Undisclosed Letter', its not just that Genovese didn't review the letter, Genovese and his counsels were never given a copy of the ex parte communication 'Undisclosed Letter'.

The District Court did NOT read the letter into record or even have it in the courtroom during the sentencing hearing.

The Prejudice continues when Genovese's counsel Scholar filed a Compassionate Release motion 7/15/20 where Judge Pauley stated the main reason for denial was the 3553 factors and in assessing that Pauley used the materially inaccurate PSR to DENY the Compassionate Release Motion, continuing the prejudice.
Genovese's counsel Max Nicholas filed a new Compassionate Release motion 8/17/21 with updated information and Pauleys colleague Judge Furman was appointed to the case and Furman used the same materially inaccurate PSR and parroted the same reasons of the 3553 factors that Pauley stated thus continuing the prejudice to Genovese Denying the motion based 3553 factors on a PSR with grossly inaccurate information.

So lets summarize the chronology of Proceedings tainted and the Prejudice suffered by Genovese;

2/12/18   Sentencing -- Genovese Grossly over sentenced, Judge used ex parte communications and a PSR with materially inaccurate Criminal History, Employment History and other information.

7/15/20   Comp. Rel. Motion -- Judge Pauley DENYS the motion primarily based on 3553 factors using the PSR with Materially inaccurate Criminal History, Employment History and other information.

8/17/21   Comp. Rel. Motion -- Judge Furman DENYS the motion based primarily on the 3553 factors, also trying to preserve Pauleys decisions, using the PSR with materially inaccurate Criminal History, Employment History and other information.

This PSR with false and materially inaccurate information & the 'Undisclosed Letter' (Ex Parte Comm.) has tainted Genovese's sentencing and two separate other filings. This is clear Prejudice to Genovese.

Bias
From the very beginning of the case Judge Pauley treated Genovese as if Pauley knew one of the victims personally. The

Page 7

yelling, impatience and prejudicial name calling seemed very out of place in a courtroom where a judge is required to be impartial.
In fact early on in the proceeding Judge Pauley in one of his outbursts in open court called Genovese a "Fraudster". That statement showed major Bias and contempt by Pauley thus eradicating his impartiality. (March 21,2019)(Tr. Line11-19).
Pauley as much adjudicated Genovese then and there as he read off "And when asked about his financial condition, they report that the information -- checking and securities accounts, not available. Total assets, not available. Credit card Liabilities, 85,000. Back rent 5,400 and total net worth 90,400. With Information like that and a lack of information, the court is not going to sentence the defendant who's a fraudster. I'm not going to be a victim of fraud. I'm going to know what's going on here."
That last statement by Pauley in his official capacity as a Federal Judge of the United States adjudicating and excoriating Genovese then and there, falsely accusing him of attempting a fraud on the judge.

Pauleys inappropriate Bias and criticism continued with his statement (Tr. pg 59 line 20) The Court:"Please. $180,000 in Legal Fees? For What? To impede the SEC's investigation?". Now the judge's bias extends to denying Genovese's right to a defense? Pauley commenting on an "on-going proceeding in another court is Bias and predjudicial.

FRCP 455 Disqualification of a Judge is crystal clear and 455(b)(1) clearly states that Bias is a valid reason here Pauley should have disqualified himself for the overwhelming bias he has shown towards Genovese repeatedly in open court. 455(a) states "Any justice, Judge, or magistrate of the U.S. shall disqualify himself in any proceeding in which his impartiality might be reasonably questioned."

Pauleys numerous biased actions and outbursts have prejudiced this entire sentencing.

Pauleys over the top hyperbole and inflammatory prejudicial statements like the statement Pauley made "Genovese is a danger to the community, truly a predator, unlike any I've encountered in 21 years on the bench." Yet Pauley presided over criminal & civil cases that were hundreds of times worse in magnitude, In sentencing Michael Cohen (Atty. to Pres. Donald Trump) Pauleys prejudicial hyperbole did not fail where he stated "... Cohen has committed a veritable smorgasbord of fraudulent activity."
Judge Pauleys bias was as, evidenced, unending and highly prejudicial to Genovese's case.
In the Skys case, Eric Skys guideline was 235-293 months and a category 2 criminal history offense level of 37, yet even though his crime was close to $100 million dollars Pauley only sentenced Skys to 120 months. The dollar loss was ten times the dollar loss in the Genovese case. Which is another instance of personal bias that Genovese suffered at the hands of Pauley.

Code of Conduct for United States Judges
Canon 3(A)(4) of the code of conduct for United States Judges provides that a judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers. The evidence clearly shows that Judge Pauley violated that Code of Conduct by accepting the ex parte communication with ▬▬▬▬ with the 'Undisclosed letter' and by giving it substantial weight in Sentencing Genovese.

Eisemanns Ineffective Assistance of Counsel continues when he did not even challenge the 2 point enhancement under USSG 2.B.1.1(b)(2)(A) and the fact that the Gov't clearly miscalculated the number of victims. This enhancement added years to my sentence undeservedly.

Under Offense Level, sub part 4 of the October 8 Plea Agreement, the Gov't stipulated that "Pursuant to USSG 2B1.1(b)(2)(A). the offense level is increased by two to 29 because the offense involved ten or more victims or resulted in substantial financial hardship to one or more victims."
For purposes of this guideline, the application notes include the definition of "victim" to mean (A) any person who sustained any part of the actual loss determined under subsection(b)(1)... in conformity with this definition of victim, discovery production of the governments "victim spreadsheet" counts a total of 14 victims with a respective 14 net subtotal sums amounting to an actual loss of $11,211,704.
The Gov'ts application of the two-level enhancement for "10 or more victims" under this guideline was calculated by jointly grouping persons who share partnered or associated or participating interests in the purported fraudulent investment scheme by virtue of simultaneous monetary contributions, or within 24 hours of same, toward the respective net-subtotal amount of actual loss for that singular victim.
Using the Gov'ts process of victim-counting pursuant to this guideline definition of "person" to include individuals, corporations, companies, associations, firms, partnership, societies, and joint-stock companies, can be best demonstrated in the case of ▬▬▬▬, where the Gov't singularly counts this victim as jointly comprised of natural persons named ▬▬▬▬, ▬▬▬▬ and ▬▬▬▬ as well.(See also, 18 USC 18)("Organization means a person other than an individual"). The Gov't again reinforces this process of jointly grouping persons as one victim in the case of ▬▬▬▬, where this victim is

Page 8

jointly comprised of natural persons ▮▮▮▮▮▮▮) and corporations (▮▮▮▮▮▮▮.)

However, the Gov'ts victim-counting process falls short of universal application among all the victims listed on its spreadsheet, and therefore subject to an arbitrary calculation improperly seeking to manipulate the threshold necessary to suffer the defendant a two-point enhancement under the Plea Agreement.

Accordingly, the attached Defendant Victim Spreadsheet is amended to unite four additional victims and jointly group them into two victims, in compliance with the Gov'ts process in effect here, and for purposes of this guideline.

This amended spreadsheet also serves to clarify the joint treatment of these four "persons" into two victims by way of their characteristics of simultaneous cash infusions as one supporting factor, and sequentially arranging such contributions as another.

Through a comprehensive and objective application of the Gov'ts victim- counting process, ▮▮▮▮ jointly united with ▮▮▮▮, where net subtotaled contribution is identical in time and kind required to constitute one victim. The others being the two separately listed trusts in the Gov'ts spread sheet, the ▮▮▮▮ and the ▮▮▮▮, who not only share trustee-twins, but who are jointly invested in time, contributions and redemptions as confirmed by the Gov't in paragraph 10 of the Indictment ("In or about the fall of 2016, ▮▮▮▮ requested and obtained a withdrawal of $1 million of the $2 million that ▮▮▮▮ ha previously invested in the fund"), so that we can legally count these trusts (persons) as one victim.

Because the guideline definition of "victim" is a "person" who sustains any part of the actual loss determination under subsection (b)(1), the three listed victims appearing on the Gov'ts spreadsheet, namely: ▮▮▮▮, require complete removal from the victim-count since the Gov't admits to no actual loss sustained by these persons.

Accordingly, we challenge the Gov'ts inclusion and application of a two-level enhancement for "10 or more victims under USSG 2B1.1(b)(2)(A), in the Plea Agreement.

4 Point Investment Adviser Enhancement

Once again in Eisemann's Sentencing Memorandum he failed completely on addressing the inapplicability of the Four Point Investment Adviser Enhancement. This is just another facet of Counsels Ineffective Assistance of Counsel.

Topic: Applicability of a four-level enhancement under section 2B1.1(b)(19)(A) of the 2016 USSG the Gov't seeks to impose against the defendant in the October 8,2018 Plea Agreement because he is alleged to be a person associated with a broker dealer or a person associated with an Investment Adviser.

Title 15 USC 80(b)1(a)(11) defines "investment adviser" as any person who for compensation engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities.

Page 9

Cont'd

Closer to the enhancement issue in the Plea Agreement, Section 80b-1(a)(17) defines a "person associated with an investment adviser" as any partner, officer, or director of such investment adviser, or any person directly or indirectly controlling or controlled by such investment adviser, including any employee of such investment adviser.
  In this case, the defendant (nor any of his (3) three pass-through shell corporations) did not receive any compensation whatsoever, and his misrepresentations, which served no other purpose other than to lure victims to separate from their investment funds, can hardly be considered "advise" as that term is commonly used. Webster Dictionary, 7th Edition ("recommendation with regard to a course of action: counsel") .

 On the contrary, this fraudulent investment scheme created a fictional platform where the defendant would purportedly receive a percentage of the profits, if any (and there was never any), that an investor garnered from his or her investment.

The record is devoid of any factual instance or reference where the defendant, whether in conversation or writing, discussed the comparative risks between the lending product and the IPO product (Pinterest) with his victim. In fact, the defendant never engaged in investment adviser activities; never established an active private fund under the Investment Company Act of 1940 (15 U.S.C. 802-3); nor did the defendant ever sell, contract, agree, or transact for future delivery of any security, note, stock, treasury stock, security future, bond, debenture, evidence of indebtedness, certificate of interest, collateral-trust agreement, preorganization certificate or prescription, transferrable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil or gas or other mineral rights, any put, call, straddle, option or privilege entered into on a national securities exchange relating to foreign currency, or in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guaranty of, or warrant or right to subscribe to or purchase any of the foregoing. See, 15 U.S.C. 80-b-1(2)(18).

  Here, the only control or power the defendant ever exercised over the management or policies of his shell companies, including Willow Advisors LLC,  was his quixotic delusion of "feigning" an official position with such companies, in order to swindle and steal money from unsuspecting dupes for transfer to his personal on-line brokerage account, and finally "trying his hand at losing personal trades."

  While the Indictment plausibly alleges that the defendant is associated with an investment adviser under the Advisers Act, it does not allege sufficient facts to support a reasonable inference that any of the shell entities are investment advisers as defined in the statute.
  The Second Circuit has interpreted them to reach all persons who manage "the funds of others for compensation." Abrahamson v. Fleschner, 568 F.2d 862, 870 (2d Cir. 1977).
  By contrast, the defendant was not a violator of securities law since neither he nor his entities were registered investment advisers for a pass-through fund derivative of a fraudulent investment scheme. The indictment does not allege that the defendant had the power to direct or cause the direction of the management and policies of a person through the ownership of voting securities or by contract.
 The substance of the allegations, therefore, amounts only to a derivative general fraud to steal money for sporadic trading in an on-line TD account.

  Excepting the propping-up and Gov't allegations, the gravamen of the present criminal case, is that the defendant effected a number of pass-through withdrawals constituting fraudulent transfers from the nine injured investors. The indictment pleads nothing more than that the defendant fraudulently withdrew money from his shell entity.

Page 10

Indeed, the defendant purportedly caused his shell company to illegally transfer money to his TD account and may have veiled such theft at times by generating thin quarterly reports, without resorting to fake records or fake trading activity. Absent any proof of the creation and dissemination of false financial records or trading information as the basic and continuing feature of the defendants ponzi scheme, the defendant cannot be convicted of securities fraud or for violation of a securities law. In short, the defendant was not engaged in any "on-going securities fraud" nor is the Gov't able to show that defendant ever offered to sell or sold a security.

Though the defendant began to solicit investor funds through shell entities he formed, and though he "told" a few investors that he would sell them "participating interests" in an empty hedge fund with a "30%-40%" annual return of capital, the defendant simply stole money so he can joy-trade options for his lavish pleasure in his personal trading account with the proceeds of that theft.

Defendant was apathetic about the theft during the few months before his fraudulent scheme expired, but he never generated false or misleading trading and financial documentation in order to conceal this transparent misappropriation of funds. Though the defendant maintained the title of "portfolio manager" on some bogus PPM filed in this case, the shell company had no trading accounts; nor did it suffer "losses" from non-existing accounts. Moreover the defendant never received any compensation from profits because he would immediately steal the investor funds, so he could personally trade options for his self-enjoyment. Thus, the indictment does not and indeed cannot describe that the defendant engaged in any managerial conduct over investor funds; nor that he or his shell LLC's provided or extended investment advice in his role as "portfolio manager". The defendant simply selling investment dreams to vulnerable persons with impressionable penchants for biographical misrepresentations emanating from the defendant's own megalomanial properties. However, the defendant did not give investment advice to these small number of victims because he never managed a portfolio under any hedge fund; nor did he ever purchase any kind of security under the empty accounts in the dry fund with investor money.

In addition, the defendant was not a "real" portfolio manager with a "real" hedge fund, and there is very little description in the accusatory instrument of the defendant's conduct in this case that he associated with an investment adviser under the Investment Advisers Act of 1940, particularly in light of Abrahamson. Notably Abrahamson has been followed by other District Courts in this circuit in finding that hedge portfolio managers are investment advisors under the Investment Advisers Act of 1940. See United States v. Onsa, 2013 U.S. Dist. LEXIS 30118 (EDNY 2013); SEC v. Juno Mother Earth Asset Mgmt, LLC, 2012 U.S. LEXIS 28114 (SDNY 2012); SEC v. Haligiannis, 470 F. Supp. 2d 373, 383 (SDNY 2007). None of these cases serve to demonstrate that the defendant was a person associated with an investment adviser (emphasis added).

Conclusion: The Court should therefore reject the Gov'ts recommendation in the Plea Agreement for a four-level enhancement under section 2B1.1(b)(19).

Schedule of Victims List
The pattern of Eisemann's Ineffective Assistance of Counsel continues with a Schedule of Victims List that I never was shown, made aware of or received.

On May 23, 2022 I received a Letter Motion from the DOJ about a Schedule of Victims List and the intent of the DOJ to have this mysterious list placed in the physical file of the clerk. This was the very first time I knew of the existence of a Schedule of Victims List.

I immediately filed on 6/3/2022 a motion in reply to this DOJ Motion. In it I stated I never received a copy of the April 20,2020 or May 13, 2022 Schedule of Victim Lists. That the DOJ in its filing they sent me did not contain any List whatsoever. Judge Furman issued a lightning ruling on this on 6/10/2022, Stating "The defendant's objection is moot in light of the Court's Order of May 13, 2022, see ECF No. 140, and the Court finds that there is no basis for reconsideration."

I really don't understand why my filing was "moot" when I never received a Schedule of Victims at any time before or after my sentencing from Eisemann, the DOJ, or the Court. Also this ECF No. 140 that Furman points to, I never received this either. As an Inmate in the BOP I have no access to the internet and ECF files. Why are Judges and the DOJ having court behind my back? Aren't I entitled to these documents? FRCP Rule 32 and the Sixth Amendment does give me that right.

So Eisemann's Ineffective Assistance of Counsel has effectively disallowed me from knowing if the Schedule of Victims is accurate. I would guess that it is highly and materially inaccurate in light of the materially inaccurate PSR and the incorrect and inappropriate 'Undisclosed Letter' and that I was sentenced with a materially inaccurate Schedule of Victims as well. So now the Prejudice continues with a materially inaccurate Schedule of Victims.

Cont'd

This also means that Victims on that list, that shouldn't be on there, will receive funds that actual victims should have received. If this Court allows this to continue then the Court is responsible, as is the DOJ in harming actual victims. This is clear Plain Error and has been highly prejudicial to my sentencing and subsequent Compassionate Release Motions.

The Sixth Amendment to the United States Constitution guarantees a criminal defendants right to assistance of counsel.U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right... to have the assistance of counsel for his defense."). When challenging the effectiveness of counsels assistance, a party must demonstrate that (1) counsels representation "fell below an objective standard of reasonableness" measured against "prevailing professional norms," and (2) this "deficient performance prejudiced the defense" in the sense that "there is a reasonable probability that, but for counsels unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Due to counsel's Ineffective Assistance of Counsel and the prejudice suffered by Genovese I am requesting the court that my sentence be Vacated, Set aside, or Corrected.

Respectfully Submitted
*[signature: Nicholas Genovese]*

Date 10/10/22

Nine (9) Victim Spreadsheet

| DATE | Ponzi Victim | Ponzi-IN | Ponzi-OUT |
|---|---|---|---|
| 6/12/14 | ███ | $19,200 | -0- |
| 7/18/14 | ███ | $ 7,875 | -0- |
|  | S. TOTAL | $ 27,075 |  |
| 9/25/14 | ███ | $ 12, 166 |  |
| 7/30/14 | ███ | $50,000 | -0- |
| 8/1/14 | ███ | $10,000 | -0- |
| 8/2/14 | ███ | $72,451.66 | -0- |
| 8/8/14 | ███ | $3,000 | -0- |
| 9/15/14 | ███ | $31,500 | -0- |
| 9/18/14 | ███ | $31,500 | -0- |
| 3/11/15 | ███ | $102,138.11 | -0- |
|  | S.TOTAL | $300,590 | -0- |
| 3/12/15 | ███ | $80,000 | -$21,085 |
|  | S.TOTAL | $58,915 |  |
| 6/16/15 | ███ | $40,000 | -0- |
| 6/29/15 | ███ | $10,000 | -0- |
| 7/13/15 | ███ | $5,000 | -$7801 |
|  | S.TOTAL | $47,199 |  |

Cont'd

Nine (9) Victim Spreadsheet Con'd

| DATE | PONZI VICTIM | PONZI- IN | PONZI- OUT |
|---|---|---|---|
| 11/24/15 | ▮ | $1,000,000 | $1,000,000 |
| 11/24/15 | ▮ | $1,000,000 | -0- |
| 1/14/16 | ▮ | $750,000 | -0- |
| 1/20/16 | ▮ | $1,000,000 | -0- |
| 1/20/16 | ▮ | $250,000 | -0- |
| | S.TOTAL | $3,000,000 | -$1,000,000 |
| 2/27/17 | ▮ | $1,000,000 | -0- |
| 2/28/17 | ▮ | $1,100,000 | -0- |
| 2/28/17 | ▮ | $900,000 | -0- |
| 4/13/17 | ▮ | $1,500,000 | -0- |
| | S.TOTAL | $4,500,000 | |
| 6/21/17 | ▮ | $300,000 | -0- |
| 6/21/17 | ▮ | $200,000 | -0- |
| 6/21/17 | ▮ | $500,000 | -0- |
| 6/21/17 | ▮ | $500,000 | -0- |
| 8/31/17 | ▮ | $50,000 | -0- |
| 9/12/17 | ▮ | $1,000,000 | -0- |
| 10/11/17 | ▮ | $400,000 | -0- |
| | S.TOTAL | $2,950,000 | |
| 1/9/18 | ▮ | $100,000 | -0- |
| | GRAND TOTAL | $10,995,945 | |

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES

v.

No. 18-Cr-183    22-CV-800

NICHOLAS J. GENOVESE

## CERTIFICATE OF SERVICE

I, Nicholas Genovese, hereby declare under penalty pursuant to 28 U.S.C. 1746, I have this day served a true and correct copy of the attached Response to the Government Submission, enter and docket notice to all parties and court upon the below mentioned parties by having placed same in an envelope with sufficient postage pre-paid in the institutions mailbox at FPC-Cumberland on this __10th__ day of __October__ 2022, in accordance with the Prison Mail Box Rule as set forth in Houston v. Lack, 489 U.S. 266 (1988); which mail is processed as first class mail through the United States Postal Service. I have sent notice to all the below listed parties First Class Mail Postage Prepaid.

\*\*\* All mail sent to me here at the FPC MUST be marked on the front of the envelope per B.O.P. regulations " SPECIAL MAIL Open only in the presence of the inmate. See C.F.R. 540.18, 540.19(a), 540.2(c)"

Respectfully Submitted

*/s/ Nicholas Genovese*

Date 10/10/22

Clerk of the Court SDNY
Pro Se Rm 200
500 Pearl Street
New York, NY 10007

U.S. D.O.J.
U.S. Attorneys Office SDNY
One Saint Andrews Plaza
New York, NY 10007
Patrick Moroney- AUSA

Judge Jesse Furman
U.S. District Court for the SDNY
40 Foley Square
New York, NY 10007

Nicholas Genovese 17079-104
FPC Cumberland
P.O. Box 1000
Cumberland, MD 21501

⇔17079-104⇔
Nicholas Genovese
Reg# 17079104
Federal Prison Camp
P.O. Box 1000
Cumberland, MD 21501
United States





⇔17079-104⇔
Clerk Of The Circuit Court
Second Circuit (Sdny)
500 Pearl ST
Rm 200 Pro Se
NEW YORK, NY 10007
United States

RECEIVED
SDNY PRO SE OFFICE
2022 OCT 19 PM 2:51